IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PAULETTE FAMBRO WALKER,

             Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,[1]

             Defendant.

CIVIL ACTION FILE NO.

1:15-CV-0945-JFK

## **FINAL OPINION AND ORDER**

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied her

application for disability insurance benefits.  For the reasons set forth below, the court

**ORDERS** that the Commissioner's decision be **AFFIRMED**.

### I.      **Background & Procedural History**

Plaintiff Paulette Fambro Walker ("Walker"), born April 9, 1951, seeks

disability insurance benefits based primarily upon her congestive heart failure and

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on
February 14, 2013.

related symptoms, including fatigue and alleged loss of concentration.[2] [Record ("R.") 43].   Walker has a high school education and prior work experience as an office manager and customer service representative.  [R. 209].  Walker has not worked since September 2009 when her employer went out of business and she was laid off from her customer service job.  [R. 28, 40, 57, 270].  Walker received unemployment benefits and continued to search for employment for approximately one year.  [R. 28, 57–58]. Walker currently lives with her daughter and her daughter's family.  [R. 44].

The claimant filed an application for disability insurance benefits on November 15, 2010, alleging that she became disabled on September 30, 2009.  [R. 22, 143–48]. After her application was denied initially and on reconsideration, an administrative hearing was held on May 15, 2013.  [R. 22, 35–65, 77–83, 87–90].  The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application on September 19, 2013, and the Appeals Council denied Plaintiff's request for review on January 27, 2015.  [R. 1–6, 22–30].  Plaintiff filed her complaint in this court on June 9, 2015, seeking judicial review of the Commissioner's final decision.  [Doc. 3].  The parties have consented to proceed before the undersigned Magistrate Judge.

---

[2]  Walker was fifty-eight (58) years old on the date of alleged onset and sixty-two (62) years old when she testified before the ALJ.

The ALJ found that Plaintiff suffered from the following severe impairments: obesity, hypertension, cardiomyopathy, congestive heart failure with occasional leg swelling, mitral regurgitation with shortness of breath and palpitations, and fatigue.[3] [R. 24].  Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 25].  Plaintiff was found to be capable of performing her past relevant work as an administrative officer and customer service representative.  [R. 30].  The ALJ, therefore, found that Plaintiff has not been under a disability since September 30, 2009, the amended alleged onset date, through the date of decision, issued September 19, 2013.  [R. 30].

The decision of the ALJ [R. 5–9] states the relevant facts of this case as modified herein as follows:

The claimant reported that she is disabled due to obesity, hypertension, cardiomyopathy, congestive heart failure with occasional leg swelling, mitral

---

[3] "Cardiomyopathy" is defined as "a structural or functional disease of heart muscle that is marked especially by hypertrophy of cardiac muscle, by enlargement of the heart, by rigidity and loss of flexibility of the heart walls, or by narrowing of the ventricles but is not due to a congenital developmental defect, to coronary atherosclerosis, to valve dysfunction, or to hypertension." http://www.merriam-webster.com/unabridged/cardiomyopathy (last visited August 18, 2016).

AO 72A
(Rev.8/82)

regurgitation with shortness of breath and palpitations, and fatigue.  However, the claimant's allegations of disability were not substantiated by the medical evidence of record.

The claimant complained of chest pain, but chest x-rays dated January 8, 2010, did not reflect evidence of any cardiopulmonary process.  In addition, a physical examination of the claimant was relatively normal.  Alicia Cain, M.D., a consultative examiner, noted that the claimant possessed a full range of motion in all of her extremities as well as five out five motor strength.  Dr. Cain described the claimant's gait as being normal, and she noted that the claimant did not require an assistive device during ambulation.

The claimant reported that her ability to sit, stand, walk, lift, and climb stairs is compromised due to pain and shortness of breath.  However, the claimant acknowledged that she is able to independently dress, feed herself, use the toilet, shop, and prepare her own meals.  An echocardiogram of the claimant demonstrated evidence of an abnormal nonspecific T wave with minimal voltage criteria for the left ventricle heart.  Based upon her observation and testing, Dr. Cain opined the claimant should be able to carry twenty pounds, handle objects without difficulty, and sit, stand, and walk for six hours out of an eight-hour work day (Exhibit 1F).

AO 72A
(Rev.8/82)

The Atlanta Heart Associates (Atlanta) treatment notes indicated that the claimant's pace maker was operating in normal fashion. The claimant's blood pressure was elevated at times.  Thus, the claimant was advised to exercise regularly and follow a low sodium, low cholesterol diet.  The Atlanta treatment notes revealed that the claimant was prescribed medications that included, but were not limited to, Coreg, Digoxin, Furosemide, Lisinopril, and Norvasc.  The claimant indicated that she feels "okay" and that she was tolerating her medications well.  In fact, the claimant's mitral regurgitation was classified as being "mild," and she possessed an ejection fraction of fifty percent on June 17, 2010 (Exhibits 2F, 3F, 5F, 6F, 8F).

In addition, Charles Jones, M.D., a State medical consultant, noted on the claimant's physical residual assessment that she was able to frequently lift objects up to twenty-five pounds, sit, stand, and walk six hours out of an eight hour day (Exhibit 12F).  Dr. Jones reported the claimant should avoid concentrated exposure to protected heights but did not restrict her from working around extreme cold, heat, wetness, humidity, noise, vibration, and respiratory irritants.  Although the claimant experienced environmental limitations due to her impairments, Dr. Jones opined that the claimant did not possess any postural, manipulative, visual, or communicative limitations.  Overall, Dr. Jones opined that the claimant still has the residual functional capacity to perform a range of medium work (Exhibit 12F).

5

On March 10, 2011, the claimant presented to Wellspring Medical Center (Wellspring) for complaints of fatigue, palpitations, dizziness, and headaches. However, the objective medical records classified the claimant's cardiovascular system as normal with a regular heart rate and rhythm. In addition, the Wellspring records indicated that the claimant's condition of hypertension was "fairly well controlled" with medication (Exhibit 4F).

Oluropo Ayeni, M.D., a treating physician, noted that the claimant experienced fatigue, dyspnea, palpitations and dizziness that were exacerbated by walking, performing household chores, or standing for long periods of time; thus, Dr. Ayeni opined that the claimant should avoid these activities. Dr. Ayeni reported that the claimant possessed a full range of motion in all of her extremities. She indicated that the claimant was not impaired in her ability to handle her personal hygiene, sort paper, perform fine and gross movements, and use a computer. Needless to say, Dr. Ayeni did not preclude the claimant from all work (Exhibit 4F).

On May 13, 2011, Homayoun Amin, M.D., a treating physician, reported that there was no evidence of apical impulse, murmurs, gallops, or rubs. The claimant's cardiovascular examination was still relatively normal (Exhibit 6F). In fact, Dr. Amin advised the claimant to exercise on a regular basis (Exhibit 10F). Contrary to the current medical evidence of records, Dr. Amin opined the claimant could only lift ten

6

pounds occasionally and lesser amounts frequently.  On February 21, 2012, he noted that the claimant could only sit for two hours and stand or walk for one hour.  Dr. Amin also reported that the claimant would be absent from work for more than four days per month based upon a decreased left ventricular ejection fraction of twenty percent that occurred three years prior to the claimant's alleged onset date followed by the implantation of her pacemaker in the year of 2008 (Exhibit 13F).

The Hands of Hope Medical Center treatment notes showed that the claimant's blood pressure decreased to 135/69 on January 17, 2013, and 112/73 on April 18, 2013.  The claimant acknowledged that she reduced her salt intake (Exhibits 15F, 16F).

During the hearing, the claimant testified that she is unable to work due to symptoms of fatigue, poor concentration, heart palpitations, and the need to rest during the day.  She stated that movement of her arms and walking causes her to feel fatigue. She stated that she is able to do laundry, cook, and walk for a block or two before she must rest.  The claimant reported that her medication of Coreg was increased from 25mg to 50mg that helped decrease her heart palpitations.  She stated that she is able to attend church and occasionally shop at the grocery store.  The claimant indicated

that she was five feet and seven inches tall and weighs one hundred and seventy-four pounds.  She stated that she could lift five pounds.[4]

The claimant testified that she stopped working because her company shut down.  She stated that she received unemployment benefits for approximately a year, and she indicated that she continued to search for jobs after September 30, 2009, but was unable to find positions that she was qualified to perform.

Otis Pearson, a vocational expert, classified the claimant's past relevant work as:  an administrative officer (sedentary, skilled work), and a customer service rep (light, semi-skilled).  Mr. Pearson opined that a hypothetical person with the claimant's particular residual functional capacity would have been capable of performing all of her past relevant work.

---

[4] With respect to lifting and carrying on a regular basis, Plaintiff testified as follows:

> Well, five pounds is manageable.  I usually don't lift groceries or anything like that; my daughter helps me with that.  It just varies; I can't do constant lifting of no more than five pounds, I can't do it.  It just drains my energy, takes me down to the fatigue that sets in.

[R. 49–50].

AO 72A
(Rev.8/82)

## II.    Standard

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards."  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment

for that of the [Commissioner].'" <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability. <u>See Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he has not engaged in substantial gainful activity. <u>See id.</u> The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments. <u>See id.</u> At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>See Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience. <u>See id.</u> "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work." <u>Doughty</u>, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to

AO 72A
(Rev.8/82)

consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work." Id. If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

### III.   Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.   The claimant has not engaged in substantial gainful activity since September 30, 2009, the alleged onset date (20 CFR § 404.1571, *et seq.*).

3.   The claimant has the following severe impairments: obesity, hypertension, cardiomyopathy, congestive heart failure with occasional leg swelling, mitral regurgitation with shortness of breath and palpitations, and fatigue (20 CFR § 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR § 404.1567(c). The claimant can lift and/or carry twenty-five pounds frequently and fifty pounds occasionally. She can sit, stand, and walk with normal breaks for a total of about six hours in an eight-hour day. The claimant can perform unlimited pushing and/or pulling, including the operation of hand and/or foot controls. However,

11

the claimant must avoid concentrated exposure to unprotected heights. She has the unlimited ability to work in environments including extreme cold, heat, wetness, humidity, noise, vibration, and respiratory irritants.

6.     The claimant is capable of performing past relevant work as an administrative officer and a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR § 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2009, through the date of this decision (20 CFR § 404.1520(1)).

[R. 24–26, 30].

## IV.     Discussion

On appeal, Plaintiff asserts that the Commissioner's decision should be reversed because the ALJ allegedly failed to "properly state the medical opinion" of Consultative Examiner, Dr. Robert J. Storms and, therefore, also failed to properly assess Plaintiff Walker's residual functional capacity ("RFC").   [Doc. 10 at 12]. Plaintiff suggests that the ALJ erred in omitting the word "simple" when characterizing Dr. Storms' assessment. [Doc. 10 at 12].  The crux of Plaintiff's argument is that *if* the ALJ had limited Plaintiff to performing simple tasks (consistent with Dr. Storms' purported limitation), *then* the ALJ would have had to find Plaintiff unable to perform

her past relevant work and been required to proceed to step five of the sequential evaluation process.[5]  [Doc. 10 at 12].

### A.   Dr. Storms Did Not Limit Plaintiff To Simple Tasks Or Simple Instructions

Plaintiff's legal argument is based on a faulty premise.  As a factual matter, there is nothing within Dr. Storms' report to indicate that Plaintiff Walker had any mental impairment or non-exertional limitations.  Dr. Storms first noted that Plaintiff has "no history of psychiatric hospitalization and does not take psychiatric medications."  [R. 320].  Dr. Storms' assessment of Plaintiff's formal mental status was unremarkable in that Plaintiff was within normal bounds as to all areas, including speech, mood/affect, perceptual abnormalities, thought processes, consciousness, orientation, memory/assessment, vegetative symptoms, energy level/speed, and reliability. [R. 322].  Dr. Storms estimated Plaintiff's IQ as "in the average range." [R. 322].

Contrary to Plaintiff's suggestion, Dr. Storms did not *limit* Claimant to simple tasks or simple instructions. While the term "simple" was included within what appears

---

[5] According to Plaintiff, because the administrative officer job is classified as a skilled position and because the customer service representative is classified as a semi-skilled position in the Dictionary of Occupational Titles, Plaintiff would be unable to perform these jobs if limited to simple tasks and simple instructions.  [Doc. 10 at 12 (citing R. 61)].

13

to be a list of standard questions, Dr. Storms does not opine that Plaintiff was actually restricted to simple tasks or only had the ability to follow simple instructions. As seen in the "Summary and Prognosis" section of his report, Dr. Storms answered the questions (underlined as in the actual report) as follows:

> Can claimant understand/carry out simple instructions?
> She can understand and can carry out simple instructions.
>
> Can claimant sustain focused attention in order to complete simple tasks in a timely fashion?
> To the extent that she is physically capable of working, she can sustain attention long enough to complete simple tasks in a timely fashion.
>
> Can claimant get along with co-workers/supervisors/public?
> She is able to get along with co-workers, supervisors, and the public.
>
> Would claimant decompensate under pressure?
> To the extent that she is physically capable of working, she would not decompensate under ordinary job stress.
>
> Can claimant handle his/her own finances?
> Should disability be awarded, she can handle her own finances.

[R. 323]. Dr. Storms provides no prognosis because his conclusion is that Plaintiff "has no Axis I mental disorder." [R. 323]. Consistent with Plaintiff Walker's own testimony, *infra*, Dr. Storms' report indicates that Plaintiff's primary complaint is "her reported heart failure." [R. 323]. According to Dr. Storms, Plaintiff alleges to be functioning with only "25 percent heart capacity; defibrillator." [R. 320].

14

Significantly, Dr. Storms twice qualifies his opinion as to Walker's mental capacity with the statement, "To the extent that she [Walker] is physically capable of working . . . ."[6] [R. 323].  Plaintiff's suggestion that the ALJ did not "properly state the medical opinion" of Dr. Storms finds no support in the record.

### B.    The ALJ's RFC Is Supported By Substantial Evidence

Moreover, the Court finds that the RFC in this case is well supported by substantial evidence.   As stated by the ALJ, the RFC finds support in the medical records, the lack of aggressive medical treatment, and the Claimant's own description of her lifestyle and daily activities.  [R. 29].

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments. . . . Along with his age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work."  Lewis, 125 F.3d at 1440 (citing 20 C.F.R. §§ 404.1545(a), 404.1520(f)).  "RFC includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, coworkers and work pressure."  Dempsey v. Comm'r of Social Security,

_____

[6] Dr. Storms also observed that "Ms. Walker's overall presentation was straightforward and matter of fact with no embellishment.  In my opinion, malingering was not an issue."  [R. 322].

454 Fed. Appx. 729, 731 n.3 (11th Cir. 2011) (citation omitted).  In determining the

claimant's RFC, the ALJ is required to consider the limiting effects of all the

claimant's impairments, even those that are not severe.  See Phillips, 357 F.3d at 1238

("[T]he ALJ must determine the claimant's RFC using all relevant medical and other

evidence in the case."); and see Jones v. Dept. of Health & Human Servs., 941 F.2d

1529, 1533 (11th Cir. 1991) (citation omitted) ("Where a claimant has alleged several

impairments, the Secretary has a duty to consider the impairments in combination and

to determine whether the combined impairments render the claimant disabled."); 20

C.F.R. § 404.1545(e).

     In the present case, the ALJ's RFC as to Plaintiff Walker reads as follows:

> [T]he claimant has the residual functional capacity to
> perform medium work as defined in 20 C.F.R §
> 404.1567(c). The claimant can lift and/or carry twenty-five
> pounds frequently and fifty pounds occasionally.  She can
> sit, stand, and walk with normal breaks for a total of about
> six hours in an eight-hour day. The claimant can perform
> unlimited pushing and/or pulling, including the operation of
> hand and/or foot controls.  However, the claimant must
> avoid concentrated exposure to unprotected heights.  She
> has unlimited ability to work in environments including
> extreme cold, heat, wetness, humidity, noise, vibration,
> respiratory irritants.

[R. 25–26].  "Medium work involves lifting no more than 50 pounds at a time with

frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do

16

medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567.

### 1.   Physical Impairment / Exertional Limitations

With respect to the RFC's exertional (physical) limitations, the ALJ assigned "significant weight" to the RFC opinion of Dr. Jones.  [R. 29].  On January 21, 2012, Dr. Jones opined that despite Walker's congestive heart failure, Claimant was capable of: occasionally lifting and/or carrying 50 pounds, frequently lifting and/or carrying 25 pounds, standing and/or walking for about 6 hours in an 8-hour workday, and unlimited pushing and/or pulling (including operation of hand and/or foot controls). [Exhibit 12F / R. 363–70].  Dr. Jones noted, "Claimant's cardiomyopathy limits the weight she can lift and/or carry."  [R. 364].  Speaking to the severity of Claimant's symptoms, Dr. Jones wrote:

> Claimant's statement that she can only lift 5 pounds and walk 1 block without stopping is not credible based on objective evidence in the MER. CL also alleges she takes full-time care of her dying sister, doing house work, cooking, cleaning house daily, goes to church, and driving her to doctor appointments.

[R. 368].[7]  As "Additional Comments," Dr. Jones explained that beyond Walker's hospital admission in 2006 due to presentation of symptoms associated with CHF

---

[7] At least between May 2011 and November 2011, Walker was the primary care giver for her sister, who was suffering from terminal cancer.  [R. 44].  Walker's sister passed away in November of 2011.  [R. 44].

AO 72A
(Rev.8/82)

(congestive heart failure), at which time she was diagnosed with hypertension and non-ischemic cardiomyopathy, examining physicians in 2010 (Dr. Cain) and 2011 (Dr. Ayeni) both found Plaintiff's "Cardiac exam unremarkable." [R. 370]. The same two physicians found Plaintiff to have clear lungs, no edema, pulses full and equal, no joint deformities or muscle atrophy, her gait was stable unassisted, her motor and sensory appeared intact, her range of motion was full and equal throughout in January 2010, range of motion slightly decreased in lower back flexion, otherwise full and equal in March 2011, and strength in all groups tested was 5/5 in January 2010, and strength 4-5/5 in March 2011. [R. 370].

The Vocational Expert ("VE") testified that Plaintiff Walker was able to perform her past relevant work. [R. 59–64]. The VE classified Plaintiff's prior positions as follows: administrative officer (not office manager), DOT number - 169.167-010, sedentary work, SVP 7, and skilled; customer service representative, DOT number - 299.367-010, light work, SVP 4, semi-skilled. [R. 61]. In response to the ALJ's first hypothetical question (range of medium work based upon Exhibit 12F - Dr. Jones), the VE testified that Plaintiff would be capable of performing her past relevant work – both as an administrative officer and as a customer service representative. [R. 61–62]. Similarly, as to the second hypothetical posed by the ALJ (range of light work based upon Exhibit 1F - Dr. Cain), the VE testified that Plaintiff would be capable of

performing her past relevant work. [R. 62–64]. The VE only precluded Plaintiff's past relevant work under the third hypothetical (based upon Exhibit 4F - Dr. Ayeni). [R. 64]. The ALJ assigned Dr. Ayeni's opinion "lesser weight."[8] [R. 29]. The ALJ took judicial notice that "the allegations of fatigue and shortness of breath upon exertion would conclude no past relevant work, no jobs." [R. 64]. Accordingly, the undersigned finds that the ALJ's RFC encompasses the exertional functional limitations supported by the record.

### 2. Mental Impairment / Non-Exertional Limitations

As for the existence of any mental impairment, the ALJ assigned "significant weight" to the opinions of Dr. Shahar and Dr. Storms. [R. 29]. As explained by the ALJ, Dr. Shahar's opinion corroborated Dr. Storms' opinion that Plaintiff Walker did not possess any medically determinable mental impairments. [R. 29, Exhibit 11F]. The ALJ found that both Drs. Shahar's and Storms' opinions were consistent with the medical evidence of record when viewed as a whole. [R. 29 (citing SSR 96-6p, 1996 WL 374180)].

The ALJ properly found that because there was no objective medical evidence to support a medically determinable mental impairment, there were no functional

---

[8] On appeal, Claimant does not contend that the ALJ improperly weighed the medical opinions and does not challenge the ALJ's finding that Walker is capable of performing a range of medium level work.

limitations.[9]  [R. 24–25].  Plaintiff Walker testified at the outset of her evidentiary

hearing that she was unable to work due to fatigue and lack of concentration.  [R. 43].

When asked by her attorney representative to explain why she felt incapable of

working, Walker testified as follows:

> Q:   Ms. Walker, tell me in your own words why you feel you're incapable of working a job.
> A:   The fatigue, the concentration is gone.
> Q:   Okay.
> A:   The heart palpitations, during the day I rest quite a bit –
> Q:   Okay.
> A:   – If I get exhausted or get tired I have to lay down, and –
> Q:   What causes you to get exhausted or tired?
> A:   Sometimes any kind of movement, for instance, shampooing my hair or moving my arms.  When I move my arms, I feel like I'm more fatigued then.  Walking can cause the fatigue, and you just feel like you go down to a level you just have to rest.  And then after I lay down or rest for a few minutes, I can come back.
> Q:   Okay, how often would you say you rest throughout the day?
> A:   I get up early, like 6:30 a.m. and I go back to bed about 8 a.m. so it varies depending on what I have to do.  If I do laundry, I have to – it takes me a while to complete it, and just have to come lay around.  And the fatigue is just what gets me.

[R. 43].

Despite her alleged poor concentration, Plaintiff testified that she did not take

any psychological medication and did not attend counseling.  [R. 56].   Plaintiff also

---

[9] Again, as discussed with respect to the alleged restriction to "simple" tasks and instructions, the skill level for the administrative officer position and the customer service job is irrelevant.

20

agreed with the ALJ at the hearing that whatever challenges she might have from a mental health perspective stem from her cardiac concerns.   [R. 56].   Accordingly, based on the evidentiary record, the ALJ expressly found:

> Poor concentration is not a medically determinable impairment in this case. According to Social Security Ruling 96-4p, **a medically determinable impairment may not be established solely on the basis of the claimant's allegation of symptoms alone**. Instead, there must be evidence from an acceptable medical source in order to establish the existence of a medically determinable impairment per Social Security Ruling 06-3p.
>
> In this case, there were no objective treatment records or emergency room visits for these conditions [poor concentration].  Fran Shahar, Ph.D., a State agency medical consultant, opined the claimant did not possess any medically determinable mental impairments (Exhibit 11F).
>
> In addition, Robert J. Storms, Ph.D., a consultative examiner, opined the claimant is capable of sustaining attention long enough to complete tasks in a timely fashion (Exhibit 7F).  Therefore, I find that the claimant does not have a medically determinable impairment of poor concentration.

[R. 24–25 (emphasis added)].   In the absence of a medically determinable mental impairment, there is no evidentiary basis for inclusion of a functional limitation within the RFC for alleged poor concentration.  See 20 C.F.R. §§ 404.1508, 404.1527(a)(1), and 404.1528.  Plaintiff does not satisfy her burden of establishing the existence of a mental impairment.  See Doughty, 245 F.3d at 1278.

21

(Rev.8/82)

**V.     Conclusion**

Based on the forgoing reasons and cited authority, the Court finds that the decision of the ALJ was supported by substantial evidence and was the result of an application of proper legal standards.   It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**.  The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner.

**SO ORDERED THIS** 22nd day of August, 2016.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

22